IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

BARBARA WILSON UPCHURCH, )
)
      **Plaintiff,** )
)
v. )   Case No. CIV-20-360-SPS
)
KILOLO KIJAKAZI, )
**Acting Commissioner of the Social** )
**Security Administration,**[1] )
)
      **Defendant.** )

## OPINION AND ORDER

The claimant, Barbara Wilson Upchurch, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED, and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423 (d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800–01.

### Claimant's Background

The claimant was fifty-one years old at the time of the administrative hearing (Tr. 30, 432). She possesses a high school education (Tr. 627). She has worked as a convenience store manager, client assistant, janitor, and call center operator (Tr. 22). The claimant alleges that she has been unable to work since an amended alleged onset date of July 10, 2018, due to blindness or low vision, depression, high blood pressure, COPD, diabetes, and recurring hernia (Tr. 626).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–85, on June 21, 2018. Her applications were denied. ALJ Daniel Curran conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 21, 2020 (Tr. 15–22). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He found that the claimant had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations:  (i) could lift/carry/push/pull up to twenty pounds occasionally and ten pounds frequently; (ii) sit for six hours out of an eight-hour day; (iii) stand or walk a combined total of six hours out of an eight-hour day; (iv) balance and climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds; (v) stoop, kneel, and crawl frequently; (vi) work in environments that contain dust, odors, fumes, and pulmonary irritants occasionally but should avoid exposure to the unguarded hazards of unprotected heights and mechanical parts; and (vii) operate a motor vehicle occasionally (Tr. 18–19).  The ALJ concluded that the claimant was not disabled because she could perform her past relevant work as a client assistant, janitor, call center operator, and convenience store operator (Tr. 22).

### Review

The claimant contends that the ALJ erred by failing to: (i) account for limitations caused by all severe and non-severe impairments thus arriving at an RFC not supported by substantial evidence, (ii) properly apply the *Winfrey* analysis at step four, and (iii) properly assess the consistency of the claimant's complaints with the evidence of record.  The Court finds the first of these contentions persuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of spinal disorders, hernias, and peripheral arterial disease (Tr. 18).  Additionally, the ALJ found that the claimant's obesity, diabetes mellitus, high blood pressure, recurrent bronchitis,

tobacco use disorder, heart arrhythmias, mood disorder, and anxiety were non-severe (Tr. 18). Relevant medical records reflect that, prior to the alleged onset date of July 10, 2018, the claimant had multiple hernia repair procedures which often had complications, was repeatedly diagnosed with bronchitis, was documented to have diabetes mellitus, was diagnosed with a spinal defect, and was diagnosed with both depressive disorder and anxiety.

The claimant underwent multiple surgical hernia repair procedures prior to the alleged onset date. According to the claimant, she had history of approximately eleven hernia repair surgeries as of 2017 (Tr. 1416). The first of the hernia repair surgeries shown in the record occurred on July 13, 2007 (Tr. 1161). Dr. Glenn H. Lytle, the surgeon who performed this procedure, noted concerns about the long-term effect of the repair in the surgical treatment notes due to the recurrent nature of the claimant's hernia and recurrent need for surgical repair (Tr. 1161). This concern proved to be true as over the next two years Dr. Lytle performed three additional hernia repair surgeries, one of which included an incidental appendectomy and another of which included removal of infected mesh (Tr. 1193–1194, 1032–1042). After the final of these surgeries, on May 19, 2009, Dr. Glen Lytle advised the claimant to avoid lifting (Tr. 1060).

In 2016, the claimant again began experiencing complications due to her recurrent hernias. When an abscess caused by infected exposed mesh from a previous hernia repair was found on the claimant's abdomen, Dr. Jay Jacinto performed a surgical procedure on September 1, 2016, which included removal of the infected mesh, a partial transverse colectomy, a partial descending colon colectomy, and ventral herniorrhaphy with organic

mesh (Tr. 845, 849–850, 870, 976–977). The claimant's hernias returned in 2017 as evidenced by several emergency room and clinic records, which note the claimant's complaints of abdominal pain (Tr. 842, 990–991, 1023–1026). The claimant continued to experience abdominal pain in 2018. CT scans taken on January 8, 2018 indicated the presence of, now, three adjacent but separate ventral hernias in the claimant's abdomen as well as a low-grade small bowel obstruction without incarceration (Tr. 748, 1386–1387).

Although the claimant's abdominal pain persisted, she was not scheduled for surgery until January 21, 2018 when Dr. Justin K Roulston found an early strangulation of one of the small hernias that was causing the claimant's bowel obstruction (Tr. 1080). Dr. Marcus McTague performed the latest of the claimant's hernia repair surgeries on January 22, 2018, during which he both repaired the hernias and removed the mesh from a previous surgery (Tr. 1263). Dr. McTague then placed the claimant in wound care when her post-op care treatment notes indicated she had serious drainage from her incision (Tr. 1303–1306). The wound care clinic placed a wound vac, periodically changed the dressing on the incision, and monitored the wound for almost 3 months after surgery until May 2, 2018 (Tr. 1310–1356).

After the amended alleged onset date of July 10, 2018, the claimant's abdominal pain returned. On June 11, 2018, the claimant visited the ER with severe abdominal pain (Tr. 1109, Tr. 1357–1362). Treatment notes of Dr. Brian S. Gaddis indicate that the claimant was sent home with medication to manage pain after a CT scan showed her interval repair was still intact and advised her to return if symptoms worsened (Tr. 1114, Tr. 1357–1362, 1393–1394).

In addition to the hernia repairs, the medical records prior to the alleged onset date also reflect the presence of chronic bronchitis, asthma, diabetes mellitus and spinal defects. From 2012 to 2016, the claimant was repeatedly treated for both bronchitis and upper respiratory infections due to wheezing, congestion, and persistent cough, in conjunction with her asthma (Tr. 760–762, 767–778, 784–786, 806–807, 952–953, 957, 959, 998–999, 1424–1425). During a May 2012 primary care visit, treatment notes acknowledged that the claimant had diabetes mellitus which she indicated that she had been diagnosed with as early as 2000 (Tr. 763–766). The claimant also complained of chronic back pain on several different occasions. On February 12, 2016, she was instructed to treat her back pain with ibuprofen (Tr. 1398). CT scans from 2018 indicated that the pack pain was likely due to a spinal defect, more specifically a grade 2 spondylolisthesis of L5 upon S1 of the claimant's spine (Tr. 748, 1386–1387, 1393–1394).

The claimant also repeatedly complained of sadness and anxiety to her primary care physician. Prior to the alleged onset date, she was diagnosed with depressive disorder as early as May 3, 2012 (Tr. 763–766). In the following years, the claimant often asked her primary care physician for an increase of dosage of or a change in her prescription antidepressant medication due to sadness, loneliness, and excessive crying, and her physician granted these requests (Tr. 974–975, 1401–1402, 1408–409). After the alleged onset date, the claimant also reported bouts of anxiety and was prescribed anxiety medicine by her primary care physician (Tr. 1006–1007, 1433–1434).

At the initial stage, reviewing physician Dr. Ronald Painton found that the claimant could perform light work subject to limitations (Tr. 440–446). Dr. Painton found that the

claimant could lift/push/pull up to ten pounds frequently and up to twenty pounds occasionally and that she could sit/stand/walk for a total of six hours of an eight-hour workday, but that she could only frequently climb ramps/stairs, and only occasionally climb ladder/ropes/scaffolds, stoop, kneel, or crouch, and that she could never crawl (Tr. 440–441). Lastly, Dr. Painton found that the claimant should avoid concentrated exposure to fumes, odors, dusts, gases poor ventilation and the like (Tr. 442). On reconsideration Dr. Sarah Yoakam found that the claimant could perform light work with the same limitations as cited by Dr. Painton (Tr. 496–499).

    Dr. Gary Lindsay determined that the claimant had severe mental impairments which caused her moderate limitations in the ability to understand, remember, and carry out detailed instructions, as well as caused her to have a markedly limited ability to interact appropriately with the general public (Tr. 437–445). Dr. Lindsay thus concluded that the claimant could understand, retain, and perform simple and some complex tasks on a sustained basis, but would have difficulty with interpersonal relations and thus would perform better in jobs with limited interaction with co-workers and no interaction with the public (Tr. 445). Despite these limitations, Dr. Lindsay noted that the claimant could work in a setting with normal supervision, where work is done mostly alone, and the claimant could adjust to mental demands of the workplace and carry out instructions (Tr. 445). On reconsideration, Dr. Lisa Swisher also found the claimant had severe mental impairments subject to the same limitations as noted by Dr. Lindsay (Tr. 493–501).

    In the written opinion, the ALJ did not include a summary of the claimant's hearing testimony but made findings as to her physical and mental impairments. The ALJ found

that the claimant did have recurring hernias but determined they did not meet duration requirements and were thus not consistent with a debilitating condition. The ALJ found the medical opinions as to the claimant's other physical impairments *somewhat* persuasive and mostly consistent with the treatment file because the claimant had a normal gait. The ALJ did not, however, mention the claimant's documented diagnosis of a spinal defect, recurrent bronchitis, or diabetes mellitus. As to the mental impairments, the ALJ addressed the state agency physician opinions and why he found them to be unpersuasive.

The claimant contends that the ALJ improperly ignored the full limitations of her back and adnominal pain as well as anxiety and depression. The RFC assessment, which accounts for the medical evidence and the claimant's subjective complaints, "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96–8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, No. 12–2509, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Comm'r of the Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

To the extent the claimant alleges any error by the ALJ in failing to find a particular impairment to be severe, such error would be a harmless error because the ALJ found other impairments to be severe and was therefore required to consider and account for *all* of the claimant's impairments (both severe and nonsevere) in formulating the claimant's RFC.

*See, e. g.*, *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) (unpublished opinion) (citations omitted) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean that the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"). The ALJ nevertheless did commit error at step four because he failed to account for (or even mention) the claimant's nonsevere impairments in formulating her RFC. In particular, the ALJ failed to discuss what if any limitations should be imposed because of the claimant's obesity, diabetes mellitus, high blood pressure, recurrent bronchitis, tobacco use disorder, and heart arrythmias despite ample evidence of all these impairments in the record.

"To sum up, to the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough

analysis." *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). This is of particular concern where, as here, there is an indication that the claimant's numerous nonsevere impairments may have combined with her severe impairments, *i. e.*, her spinal disorders, hernias, and peripheral arterial disease, to limit her ability work. *See Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003)("The ALJ's step-two finding [of the severe impairment of spinal disorders and hernias] makes it impossible to conclude at step four that her pain was insignificant[.]") [unpublished opinion]. *See also McFerran v. Astrue*, 437 F. App'x 634, 638 (10th Cir. 2011) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]") [unpublished opinion]. Because the ALJ failed to properly account for all of the claimant's impairments in formulating her RFC, the Commissioner's decision must be reversed, and the case remanded to the ALJ for further analysis.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby REVERSED, and the case REMANDED for further proceedings not inconsistent herewith.

**DATED** this 22nd day of February, 2022.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**